Smith, P. J.
Action to recover for personal injuries sustained by. plaintiff in falling upon a sidewalk, which it *708 is alleged the defendant negligently suffered to be out of repair and in an improper and dangerous condition.
The appellant’s contention that there was no evidence of the defendant’s negligence, cannot be maintained. The accident occurred on the 27th of February, 1883. The plaintiff’s fall was caused by ice formed by the freezing of water that had been precipitated upon the sidewalk from a conductor pipe leading from the roof of the adjoining building. The original design of the construction appears to have been to carry the water from the mouth of the pipe at the side of the building to the street by means of a gutter channeled in the surface stone of the sidewalk from the pipe to the curb stone. It is questionable whether the gutter was large enough for the purpose. The pipe was about four inches in diameter; and the gutter, the bottom of which was oval, was about four inches in width, and from three-quarters of an inch to an inch and a half in depth. One witness testified that the gutter was not large enough to carry “any volume of water.” But whether or not, it was large enough to carry off the quantity of water discharged by the pipe, there were defects in the pipe and the gutter which prevented the accomplishment of that object. The pipe had become disjointed and broken, so that instead of leading the water to the gutter, it permitted it to scatter and run over on to the sidewalk. One of the gutter stones had become broken and the broken piece was elevated at one end and depressed at the other, so that, as some of the witnesses testified, it tended to cast the water over on to that part of the sidewalk where, it appears, the plaintiff slipped and fell. That condition of things appears to have existed for years, and the inevitable consequence was that in freezing weather there was ice upon the sidewalk, formed by the congelation of water discharged by the pipe. By successive freezings the ice had accumulated, so that, at the time of the accident, it formed a hummock or mound, several inches in height, next to the building, and spreading out several feet, upon the sidewalk, gradually lessening in thickness as it extended. The plaintiff’s fall. was caused by slipping on ice thus formed. That the defendant is chargeable with notice, is unquestionable. The jury had the right to infer notice from the lapse of time and the notorious character of the nuisance. Besides, there was proof of actual notice to the defendant’s superintendent, and officer having special supervision of the streets of the city, and that was notice to the defendant. Rehberg v. Mayor, etc., of New York, 91 N. Y., 137. That it was the duty of the defendant to remedy the defects, within a reasonable time after notice, is undeniable. That the defects were capable of an easy remedy, appears from the fact, proved without *709 objection, that in the summer after the plaintiff was injured the pipe was connected with the street sewer.
The case is obviously distinguishable from those cited by the appellant’s counsel. They are Blakeley v. The City of Troy, 18 Hun, 167; Muller v. City of Newburgh, 82 id., 24; S. C. affi’d, 105 N. Y., 668; 8 N. Y. St. R., 910; Smith v. City of Brooklyn, 36 Hun, 224; Taylor v. City of Yonkers, 105 N. Y., 202; 7 N. Y. St. Rep., 332.
The decisive fact in each of those cases was, that the dangerous condition of the sidewalk was owing to natural causes,_ operating at so short a time before the injury, as that, either notice to the defendant could not be presumed, or a reasonable opportunity had not been afforded, to apply a l’emedy. Here, however, the roof of the building was, in effect, made a reservoir, from which, on the thawing of the snow and ice gathered there during the winter, water issued upon the sidewalk, the freezing of which, at the next cold change of weather, rendered the thoroughfare perilous to travelers.
In Taylor v. City of Yonkers (supra), a natural cause concurred with a culpable defect in producing the injury; and it was held that the municipality could not be made liable unless it appeared that the injury would not have been_ sustained but for such defect. That there was no proximate, natural cause of the injury in. this case, appears from the fact, testified to by some of the witnesses, that on the day of the accident, the sidewalk was clear of ice and snow at all points except where the plaintiff fell. The sole cause of the injury was the amount of ice that had been forming during the winter, by means of the artificial and defective arrangement, whereby the water was conducted from the roof to the sidewalk and there suffered to lie till it was frozen.
It is also contended for the appellant, that the plaintiff is shown to have contributed to the injury by her own negligence. The sidewalk on which the plaintiff fell was on the south side of Main street, in front of Haskell Bros.’ store. Adjoining that building, on the east, was Craine & Walter’s store, and on the front of that, and just east of the division fine between the two, was the conductor pipe referred to. Underneath the pipe, was a stone called a “láser,” which, as was testified, was six or eight inches in height above the surface of the sidewalk, and projected from the building three and a half or four feet. There was ice in front of the riser and at its west end. The plaintiff had been in Haskell’s store. She testified that as she came out of the store and turned around the riser, on her way homeward, she slipped and fell. She also testified: “I was walking carefully when I came out of Haskell’s *710 store; was walking slowly; I had arctic rubbers on my feet— good rubbers, nearly new.”
The accident occurred between five and six o’clock in the afternoon. The plaintiff had left home between three and four o’clock, accompanied by a neighbor, who had a child in a sled, and the two went upon the sidewalk past Haskell’s store, drawing the sled.
The plaintiff testified, on cross-examination, that they drew the sled on the bare sidewalk, there being no ice or snow upon it, a fact which she then noticed; that it was a very pleasant day; did not snow and was not freezing; that she did not remember the condition of the walk at Craine & Walter’s store as she then passed along; that she knew the riser was there when she came out of the store; that when she came out she did not look to see whether there was any ice or not; that she did not think there was any ice on the south side of the street in the afternoon; that she started to go eastward when she turned around the riser; and that when she turned around the riser she immediately fell. She also testified that she fell in front of the riser, very near the corner of it; should think about a foot from it. It appeared that there was an open space between the ice and the cut stone, where, if she had gone around the ice, she might have passed, but that fact and also the fact that she was not thinking of the condition of the sidewalk, were but circumstances to be considered by the jury, in connection with the fact that, so far as appears, her attention had not been called previously to the existence of the ice.
The question of contributory negligence was properly left to the jury, and there is no ground for saying that their verdict; is • clearly against the weight of evidence. Darling v. The Mayor, 18 Hun, 340, and cases there cited. The case is clearly distinguishable from Durkin v. Troy (61 Barb., 437) and other like cases. There the injured person was told of the obstruction immediately before he encountered it; and notwithstanding he could easily have avoided it he voluntarily took the risk of its dangers.
Exception was taken to the admission of the testimony of a witness, that on the day of the plaintiff’s accident, between four and five o’clock in the afternoon, the witness slipped and fell at the same place at which the plaintiff fell; and of another witness, that he slipped and fell at that point on the ice formed by the water flowing from said pipe, two winters before the plaintiff’s injury. No ground of objection was stated to the question put to the first witness; to that put to the second, the objections were, that it was too remote, irrelevant and immaterial. So far as appeared, the condition of things at the point referred to, was *711 substantially the same on the occasions to which the questions pointed, as at the time when the plaintiff was injured.
The first witness referred to, Mrs. Williams, testified that she had been familiar with the location a long time, passed it often, and that on the occasion to which she testified, she was turning to go into Haskell’s store, and her foot slipped, it seemed to her, from a hummock of ice, and she fell.' The second witness, Patten, testified that he examined the condition of the walk at the point where the plaintiff fell, the same evening that it occurred; he described the amount and position of the ice there then, and stated that when he fell, two years before, there was about the same amount of ice there or a' little more. The reception of the testimony objected to seems to be authorized by the cases of Quinlan v. The City of Utica (11 Hun, 217), S. C., aff’d (74 N. Y., 603) and Pomfrey v. Village of Saratoga Springs (104 N. Y., 459, 469; 5 N. Y. State Rep., 802).
Testimony of the like nature was received from several other witnesses at the trial, without objection. See Osborne v. Detroit (32 Fed. Rep., 36) on the several questions above considered.
The judgment and order should be affirmed.
All concur.